Military pay; release of Reserve officer from active duty; adverse action, what constitutes; discretion of agency Secretary. — On April 18, 1980 the court entered the following order:
Walter E. Warren, attorney of record, for plaintiff. Wolf, Arnold & Cardoso, P.C., of counsel.
Gordon A. Jones, with whom was Assistant Attorney General Alice Daniel, for defendant. Louis R. Davis, Major, JAGC, Department of the Army, of counsel.
Before Nichols, Judge, Presiding, Kashiwa and Smith, Judges.
This action is before the court on defendant’s motion for summary judgment or, in the alternative, for dismissal for failure to state a claim. Plaintiff, Ellis L. Webb, has filed a cross-motion for summary judgment. Plaintiff was a Reserve major in flying status on active duty in the United States Army. In February 1974, an officer evaluation report (OER) was executed by Major Webb’s reporting senior officers, evaluating his performance during the June 11, 1973, through January 14, 1974, rating period. This "original” OER was executed, signed, and dated by the rater on February 4, 1974, and signed and dated by the indorser on or about February 5. The original OER was never forwarded to the reviewer for approval.
The original OER did contain critical remarks about an incident that occurred after duty hours when Major Webb, accompanied by a male noncommissioned officer and two enlisted members of the Women’s Army Corps (WAC) under ■ his command, flew in a rented plane from Troy, Alabama, to Fort Rucker, near Dothan, Alabama. Because of weather conditions, Major Webb drove his companions by automobile back to the WAC’s quarters in Troy the same evening. Among comments in the original OER, Major Webb was stated to have exercised "poor moral judgment” in that incident and to have displayed "conduct not acceptable to the Officer Corps.” Due to low scores combined with critical narrative remarks in the original OER, this particular report was "adverse” within the meaning of Army Regulation (AR) 623-105 ¶ b-2h (1973).
Plaintiff, as required by AR 623-105 ¶ 4-4/ (1973), was furnished a copy of the original, adverse, OER on or about February 6, 1974, and given until February 11, 1974, to *748 rebut or to respond to the report. On February 8, 1974, a substitute OER was prepared for the same period and signed by the same rater and indorser and was substituted for the original report. The second OER was forwarded to the reviewer who approved it on or about February 11, 1974, and a copy was furnished plaintiff on or about February 12, 1974. This second OER, that eventually found its way into plaintiffs records, had upgraded Major Webb’s performance of duty in certain respects and, under the regulations, was no longer officially considered to be adverse; therefore, plaintiff was afforded no right to respond to the OER for the period.
Among other things, the substitute OER as filed contained no reference to any deficiency in Major Webb’s moral judgment but did say he showed a need for "much” improvement in "judgment” reliability, and characterized his handling of the WAC incident as an exercise of "poor judgment,” as contrasted to the earlier characterization of "poor moral judgment.”
Subsequent to inclusion of the February 8, 1974, OER in plaintiffs records, and of two additional OER’s prepared by different seniors, the Army Active Duty Board, pursuant to Special Order No. 81, ordered plaintiff released to inactive duty, effective July 14, 1975. On July 7, 1975, plaintiff appealed the OER for the period June 11,1973-January 14, 1974, to the Army Military Personnel Center. This application was denied on July 25,1975. At the time of his release, Major Webb was a Reserve officer serving on active duty without the benefit of an active duty agreement. On July 15, 1975, plaintiff reenlisted in the Army as a noncommis-sioned officer.
On October 27, 1975, plaintiff renewed his appeal by filing an application with the Army Board for Correction of Military Records (board), seeking to be reinstated in his former rank, and to have this OER for the period June 11, 1973-January 14,1974, removed from his personnel file. On June 2, 1976, the board denied plaintiffs application. On November 17, 1976, plaintiff filed an application for reconsideration by the board. On January 19, 1977, the board reconsidered plaintiffs complaint, and again denied plaintiffs application.
*749 Plaintiff contends that the handling of the OER for the period in question, and defendant’s denial of plaintiffs application for relief is arbitrary, capricious, and contrary to law. We cannot agree.
It is unfortunate that plaintiff seems to have misper-ceived the permissible scope of this court’s review of administrative determinations by the military. This court cannot interfere with the decisions of the board unless the decision of the board is clearly unsupported by substantial evidence.[1] It is well established that there is a presumption of validity to actions taken by a correction board.[2] It is further presumed that the correction board performed its function properly and considered all the pertinent records relating to the plaintiff.[3] As stated in Boland,[4] where there is found to have been substantial evidence before the board to support its findings, plaintiff will be held to have failed to sustain his burden of proof and his claim must fail. The board’s decision in the instant case is entitled to those considerations of validity and propriety and is final unless it is shown by cogent and clearly convincing evidence that the board’s decision is arbitrary, capricious, or contrary to law.[5]
Plaintiff contends that the denial of his application by the board was arbitrary, capricious, and contrary to law. It is asserted that defendant violated Army regulations by including improper material in plaintiffs OER. It was the inclusion of this improper material, and accompanying scores in the OER, that plaintiff contends caused his release from active duty. If the material included in Major Webb’s OER did in fact violate Army regulations, such a determination would support plaintiffs claim before this court. The *750 Secretary of the Army, through his board, cannot release plaintiff in contravention of his own regulations;[6] for these regulations are binding on the Secretary and have the force and effect of law.[7]
First, plaintiff contends that the OER for the period in question violates AR 623-105 ¶ 1-26(3)(1973), asserting that the comments in part IV of the OER still include references to the WAC incident mentioned in the "original” evaluation, and that it is the inclusion of this "adverse” and "derogatory” information that violates Army regulations. Plaintiff argues that the inclusion of this information was improper since the underlying facts of the incident were never investigated. In the alternative, plaintiff further asserts that the substitute OER was improper since the unfavorable evaluation of Major Webb’s performance was directly attributable to the one incident with the WAC’s, and therefore Major Webb’s scores are attributable to one or a few striking incidents. Plaintiff contends this contravenes AR 623-105 ¶ 4-2e (1973). Unfortunately, although plaintiffs case is well and vigorously argued, plaintiffs charges are not supported by the record.
In dealing with Major Webb’s first charge, that references to the WAC incident were adverse, derogatory, and based on unsubstantiated facts, the definition of "adverse” must be considered. For a report as a whole to be considered "adverse” under the regulation, paragraph 5-2h of AR 623-105 states that the "adverse” OER must exhibit one of the following: it must exhibit a "no” response by the rater to one of the basic questions in part IV of his evaluation; the adjectival ratings of an officer must be "marginal” or "inadequate”; or it must be recommended by the rating officers that this particular individual be promoted behind his contemporaries. Plaintiffs OER contains none of these specified characteristics. Nor has plaintiff substantiated his charge that the OER in question contains unresolved, or unsubstantiated information, i.e., that the reference to the WAC incident violates paragraphs 1-26 (3) and 1-56 of AR 623-105. In paragraph 1-56 it is stated that administrative *751 or punitive action will not be mentioned in an officer’s OER unless such action or investigation has been completed, and final action has been taken within the rating period. In the present case, after a "confrontation” was arranged by the rating and indorsing officers, at which Major Webb and one of the WAC’s were among those in attendance, it was resolved that no formal disciplinary action would be taken against plaintiff. It was further resolved, however, that the "incident” should be reported in Major Webb’s next OER. This is "final” action as envisioned within the Army regulations.[8] Therefore plaintiffs charge that the OER contained adverse, derogatory, and unsubstantiated information is unsupported by the record.
Plaintiff also charges that his OER was based on one or a few striking incidents and thus contrary to regulations. Again the words of AR 623-105 ¶| 4-2e (1973) are taken out of context. First, paragraph 4-2e states that the rated officer’s scores in his OER must be based on the information and observations of the rating officer. Here plaintiff had an ongoing relationship with the rating and indorsing officers who signed his OER. The prohibition against basing the OER scores on a few or isolated incidents would seem merely to require that a rating officer have significant contact with the rated officer, so as to make an objective evaluation. It cannot be said, based on the evidence before the board, that plaintiffs low "scores” were solely attributable to this one incident. The "WAC incident” was therefore properly included in plaintiffs OER. If specific incidents were as widely excluded as plaintiff would have us believe, then one "incident” involving the lapse of a particular officer’s command decision efficiency would be excluded from an officer’s OER even though such a single transgression or lapse in efficiency might be a justification for that officer’s removal. Contrary to plaintiffs assertions, references in the OER to the WAC incident were not false to the facts in any material particular. Certainly there was sufficient evidence before the board for it to conclude that *752 the incident as described in the filed OER occurred substantially as reported therein, justifying its mention as an incident supporting the rater’s evaluation of plaintiffs "judgment.”
Plaintiffs other arguments are equally insufficient to warrant reversal of the board. The evidence before the board was sufficiently substantial to support its decision and to preclude a finding by the court that Major Webb’s OER was defective or that Major Webb’s release from active duty was a direct consequence of the issuance of this particular OER. Plaintiff has not by cogent and clearly convincing evidence demonstrated that the correction board’s denial of his application was arbitrary, capricious, or contrary to law. Again, this court is not in a position to substitute its judgment for that of the military.
As indicated earlier, Major Webb was a Reserve officer serving in the military without the benefit of an active duty agreement. Under 10 U.S.C. § 681(a), Reserve officers serve on active duty only at the discretion of the Secretary.
it is therefore ordered, upon consideration of the parties’ submissions and other papers, and after oral argument, that defendant’s motion for summary judgment is granted; plaintiffs cross-motion for summary judgment is denied; and plaintiffs petition is dismissed.
Plaintiffs motion for rehearing to alter judgment was denied May 30,1980.

 Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953); Furlong v. United States, 153 Ct. Cl. 557, 563 (1961); see also Cooper v. United States, 178 Ct. Cl. 277, 288 (1967).

 Armstrong v. United States, 205 Ct. Cl. 754, 762 (1974); Cooper v. United States, 203 Ct. Cl. 300, 304 (1973).

 Armstrong v. United States, supra note 2, 205 Ct. Cl. at 756; Biddle v. United States, 186 Ct. Cl. 87 (1968); Caddington v. United States, 147 Ct. Cl. 629, 634, 178 F. Supp. 604, 606(1959).

 Boland v. United States, 169 Ct. Cl. 145, 148 (1965).

 Dorl v. United States, 200 Ct. Cl. 626, 633, cert. denied, 414 U.S. 1032 (1973); Hoffman v. United States, 175 Ct. Cl. 457 (1966), cert. denied, 389 U.S. 843 (1967); Hoen v. United States, 157 Ct. Cl. 235 (1962); Furlong v. United States, supra note 1, 153 Ct. Cl. at 380.

 Service v. Dulles, 354 U.S. 363, 380 (1957); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 270 (1954); Vitarelli v. Seaton, 359 U.S. 535, 539 (1959).

 Dorl v. United States, supra note 5.

 See AR 623-105 j| 5-2#. This regulation outlines the "actions” that may be taken when an "unusual, adverse, or derogatory” report is submitted on an officer. Again, what "action” may be taken would seem to lie in the discretion of the person in command of such reports.